UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Sylvester Taylor,

        Plaintiff,

v.

Benjamin Rice, Jr. and Renee Hunter,

        Defendants.

Civil No. 10-4746 (SRN/JJG)

**REPORT AND RECOMMENDATION**

---

       Sylvester Taylor, Federal Prison Camp - Duluth, P.O. Box 1000, Duluth, Minnesota, 55814, Plaintiff, pro se.

       Lonnie F. Bryan, Assistant U.S. Attorney, 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota, 55415, for Defendants.

JEANNE J. GRAHAM, United States Magistrate Judge

       Plaintiff, a federal prison inmate, is attempting to sue two employees of the Federal Bureau of Prisons, ("BOP"), who allegedly have violated his federal constitutional rights and continue to do so. Defendants have filed a motion pursuant to Fed. R. Civ. P. 12(b)(1), seeking to have this action dismissed for lack of subject matter jurisdiction. (Docket No. 19.) The motion has been referred to the undersigned Magistrate Judge for a report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court recommends that Defendants' motion to dismiss be DENIED.

**I.   BACKGROUND**

       Plaintiff is incarcerated at the Federal Prison Camp in Duluth, Minnesota, ("FPC-Duluth"). He is attempting to sue two health care providers employed at FPC-Duluth –

Benjamin Rice, who is identified as "a physician and the Clinical Director at FPC Duluth," and Renee Hunter, who is identified as a "Physician's Assistant at FPC Duluth." (Complaint, p. 2, ¶s 2-3.)  Plaintiff claims that Defendants are violating his federal constitutional rights, because they refuse to provide certain medical care that he allegedly needs.

Before describing the factual background of this case, the Court must first explain the gist of Defendants' motion to dismiss.  As a general rule, motions to dismiss for lack of subject matter jurisdiction fall into one of two categories.  In some cases, the alleged jurisdictional defect appears on the face of the plaintiff's complaint.  In such cases, defendants will argue that even if all of the facts alleged in the complaint are true, the action still must be dismissed for lack of subject matter jurisdiction.  In other cases, defendants will argue that the grounds for federal subject matter jurisdiction that are cited in the complaint are factually erroneous.  In those cases, defendants typically submit evidence intended to disprove the factual allegations that purportedly give rise to federal subject matter jurisdiction.  Thus, "[o]n a motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction, the court must first 'distinguish between a 'facial attack' and a 'factual attack.'"  Argo Global Special Situations Fund v. Wells Fargo Bank, N.A., ___ F.Supp.2d ___, Civil No. 3614 (SRN/JJG), (D.Minn. 2011), 2011 WL 3837079 at *2, quoting, Osborn v. United States, 918 F.2d 724, 729 n. 6 (8th Cir.1990).

In this case, Defendants have offered reams of evidentiary material in support of their motion to dismiss. (Docket No. 21.)  This would seem to suggest that Defendants are attempting to mount a "factual attack" against Plaintiff's assertion of federal subject matter jurisdiction, rather than a "facial attack."

2

However, the Court finds that Defendants' voluminous evidentiary submissions have no bearing on the resolution of the present motion to dismiss the complaint for lack of subject matter jurisdiction. The resolution of Defendants' current motion hinges on the validity of their legal arguments – not the truthfulness or accuracy of the factual allegations in Plaintiff's complaint. If Defendants' current legal arguments are well-founded, then Plaintiff's complaint will have to be dismissed for lack of subject matter jurisdiction, even if all of the allegations in the complaint are accepted as true. For this reason, the Court finds that Defendants' subject matter jurisdiction arguments are "facial," not "factual." The allegations in the complaint will therefore be accepted as true (for now), and the Court will determine whether this action must nevertheless be dismissed for lack of subject matter jurisdiction based on the <u>legal arguments</u> advanced by Defendants.[1]

Plaintiff alleges in his complaint that "[f]or several years," he "has been complaining to medical staff at FPC Duluth that he has chronic severe testicular and stomahc [sic] pain." (Complaint, p. 2, ¶ 6.) He cites several possible causes of his groin condition,[2] including "a small hydrocele and varicocele," (id., p. 2, ¶ 7), an injury that

---

[1] Because Defendants' arguments are "facial" rather than "factual," the evaluation and ultimate resolution of the current Rule 12(b)(1) motion would not change even if the Court were to accept Defendants' explication of the facts, rather than Plaintiff's. If Defendants' legal arguments are valid, there is no subject matter jurisdiction, regardless of which version of the facts might be most accurate. However, if Defendants' legal arguments are not valid, then subject matter jurisdiction exists, and their <u>current</u> motion must be denied, even though Plaintiff's factual allegations might ultimately be confuted.

[2] The complaint includes several descriptions of Plaintiff's malady. It is referred to as "lower abdominal/testicular pain," (Complaint, p. 3, ¶ 10), "scrotal pain," (id.), and "chronic, severe stomach and groin pain," (id., p. 3, ¶ 11). For now, the Court will refer to this collection of ailments collectively as simply a "groin condition."

occurred while he was performing a prison work assignment, (id., p. 2, ¶ 8), a hernia operation that was performed when Plaintiff was a young child, (id., p. 4, ¶ 13), a lower back injury that occurred during the early 1990s, (id.), a motor vehicle accident that occurred during the early 2000s, (id.), possible "nerve damage," (id.), and possibly "an entrapped cord," (id.).

Plaintiff claims that Defendants have violated his constitutional rights under the Eighth Amendment, because they have failed to properly treat his groin condition. (Id., p. 3, ¶ 12; p. 5, ¶ 18.) According to the complaint, Defendants have "ignored self-reported information that could help in diagnosing [Plaintiff's] complaints of pain," (id., p. 3, ¶ 13), and "Defendants refuse to take any action to ascertain the source of [Plaintiff's] pain and/or otherwise treat [Plaintiff's] severe, chronic pain," (id., p. 4, ¶ 14).

Plaintiff also alleges that he has an eye disease called Keracotonus. The complaint states that Plaintiff has been referred to an eye specialist, who has "recommended treatment plans," but "Defendants have ignored the consultant eye specialist's treatment recommendations," and have instead "opt[ed].. to do nothing." (Id., p. 4, ¶ 16.) Plaintiff alleges that he is "going blind in his left eye because Defendants refuse to provide... any treatment for his Keracotonus," and that he also "is slowly losing his site [sic] in his right eye, too, because of Defendants' deliberately indifferent care." (Id., p. 4, ¶ 15.) Based on these additional allegations, Plaintiff claims that "Defendants have and continue to act with deliberate indifference in treating [Plaintiff's] Keracotonus, a serious medical need, in violation of the Eighth Amendment." (Id., p. 5, ¶ 20.)

The relief that Plaintiff is requesting in this case plays a critical role in the resolution of Defendants' motion to dismiss. Plaintiff is not seeking a judgment against

4

Defendants for money damages to compensate him for past injuries. Instead, Plaintiff is seeking only prospective relief. He is seeking an injunction, or some other purely equitable remedy, that would compel Defendants to provide certain specific medical care for his groin condition and his Keracotonus. Plaintiff is asking for a judgment against Defendants that would mandate the following:

> (i) that Plaintiff "be seen by [a] neurologist to determine if his pain is neurological in origin;"
>
> (ii) that Plaintiff "be seen by a general surgeon for evaluation of a possible entrapped cord;"
>
> (iii) that Plaintiff receive "an MRI of his spinal cord from L5 to his pelvic region to help ascertain the etiology of his pain;" and
>
> (iv) that Plaintiff be given "a cornea transplant to correct his Keracotonus in his left eye, and a Keracotonus contact lens for his right eye."

(Id., p. 5, ¶ 21-24.)

Defendants contend that Plaintiff's lawsuit must be summarily dismissed for lack of subject matter jurisdiction. The Court disagrees.

## II.    DISCUSSION

"Subject matter jurisdiction... is a threshold requirement which must be assured in every federal case." Turner v. Armontrout, 922 F.2d 492, 293 (8th Cir. 1991). "[W]here jurisdiction does not exist the court, whether trial or appellate, shall dismiss the action sua sponte." Williams v. Rogers, 449 F.2d 513, 518 (8th Cir. 1971), cert. denied, 405 U.S. 926 (1972), (citing Louisville and Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152 (1908)). Fed. R. Civ. P. 12(h)(3) provides that "[i]f the court determines at any time

that it lacks subject-matter jurisdiction, the court <u>must</u> dismiss the action." (Emphasis added.)

To begin the analysis, the Court will discuss Defendants' basic premise that sovereign immunity precludes subject matter jurisdiction in this case. This discussion, in turn, lends itself to a discussion regarding Plaintiff's claims and, then, to the ultimate question of waiver of sovereign immunity by the defense. Finally, the Court addresses Defendants' argument that a writ of mandamus cannot be granted.

A.   <u>Sovereign Immunity Precludes Subject Matter Jurisdiction</u>

First, Defendants contend that Plaintiff's current lawsuit must be dismissed for lack of subject matter jurisdiction, because his current claims for relief are barred by the doctrine of sovereign immunity. If Plaintiff's claims are barred by sovereign immunity, then it is certainly true that this case must be summarily dismissed for lack of subject matter jurisdiction. See <u>F.D.I.C. v. Meyer</u>, 510 U.S. 471, 475 (1994) ("[s]overeign immunity is jurisdictional in nature"); <u>United States v. Mitchell</u>, 463 U.S. 206, 212 (1983) ("[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction"); <u>Barnes v. United States</u>, 448 F.3d 1065, 1066 (8th Cir. 2006) ("[f]ederal courts generally lack jurisdiction to hear claims against the United States because of sovereign immunity"); <u>Jones v. United States</u>, 255 F.3d 507, 511 (8th Cir. 2001) ("it is axiomatic that because sovereign immunity implicates our subject matter jurisdiction, the issue may not be waived, and the government may raise it at any stage").

Therefore, the elemental issue in this case is whether Plaintiff's current claims are indeed barred by the doctrine of sovereign immunity. Defendants' sovereign

immunity defense cannot be properly analyzed, however, without first fully recognizing the true nature of Plaintiff's current claims for relief.  Plaintiff contends that Defendants have violated his constitutional rights under the Eighth Amendment, because they have been, and continue to be, deliberately indifferent to his serious medical needs. This removes the case from the more common type of dispute, where a prisoner seeks only monetary damages for past injuries caused by defendants. Accordingly, the significance of plaintiff's claims for relief must first be examined.

      B.     Plaintiff Seeks Equitable Relief

In this case, Plaintiff is seeking only equitable relief. He requests an injunction to compel Defendants to rectify alleged ongoing violations of his Eighth Amendment rights. If this were a more typical prisoner civil rights case, involving monetary damages for past injuries, Plaintiff would undoubtedly sue Defendants in their individual capacities, based on the Supreme Court's decision in Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).  Bivens provides a remedy for a claimant who is seeking money damages from a federal employee, in his or her individual capacity, for a past violation of the claimant's federal constitutional rights.  See Carlson v. Green, 446 U.S. 14, 18 (1980) ("Bivens established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right").

   But here, Plaintiff is attempting to sue Defendants only in their *official* capacities, and he is seeking only *injunctive* relief to stop ongoing injuries from continuing into the future.  Arocho v. Nafziger, 367 Fed.Appx. 942, 949 (10th Cir. 2010) (unpublished opinion) ("[i]f equitable relief rather than damages is sought from a federal official, it

7

must be obtained against him in his official capacity through a claim in the nature of injunction or mandamus"). Accordingly, Bivens does not apply and the question becomes whether Plaintiff can sue the defendants in their official capacities.

      C.      Sovereign Immunity Generally Bars Official Capacity Claims

A claim brought against a governmental agent in his or her official capacity is deemed to be a claim against the agent's employer. Buford v. Runyon, 160 F.3d 1199, 1201 (8th Cir. 1998) ("[i]t is well settled that 'an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity'") (quoting Kentucky v. Graham, 473 U.S. 159, 166 (1985)); Bankhead v. Knickrehm, 360 F.3d 839, 844 (8th Cir.) ("[s]uits against public employees in their official capacity are the legal equivalent of suits against the governmental entity itself"), cert. denied, 543 U.S. 818 (2004); Elder-Keep v. Aksamit, 460 F.3d 979, 986 (8th Cir. 2006) ("[a] suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

Therefore, when a federal employee is sued in his or her official capacity, the plaintiff is deemed to be suing the United States itself. See Atkinson v. O'Neill, 867 F.2d 589, 590 (10th Cir. 1989) ("[w]hen an action is one against named individual defendants, but the acts complained of consist of actions taken by defendants in their official capacity as agents of the United States, the action is in fact one against the United States").

The doctrine of sovereign immunity bars claimants from suing the United States, unless Congress has expressly waived the Government's immunity. F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994) ("[a]bsent a waiver, sovereign immunity shields the Federal

8

Government and its agencies from suit"); Manypenny v. United States, 948 F.2d 1057, 1063 (8th Cir. 1991) ("[i]t is undisputed that the United States, as a sovereign, cannot be sued without its consent"). Because a claim against a federal employee in his or her official capacity is deemed to be a claim against the federal government itself, such claims are also barred, unless sovereign immunity has been waived. Atkinson, 867 F.2d at 590 ("[i]t is well settled that the United States and its employees, sued in their official capacities, are immune from suit, unless sovereign immunity has been waived"); Hodge v. Dalton 107 F.3d 705, 707 (9th Cir.) ("[t]he doctrine of sovereign immunity applies to federal agencies and to federal employees acting within their official capacities"), cert. denied, 522 U.S. 815 (1997).[3]

Thus, the critical question for this case is whether Congress has waived sovereign immunity for actions brought against government employees in their official capacities, where the plaintiff seeks prospective or injunctive relief?

D. Waiver of Immunity

Plaintiff contends that Congress has waived sovereign immunity as to his current injunctive claims by enacting 5 U.S.C. § 702. That statute, which is part of the Administrative Procedures Act, ("APA"), provides as follows:

---

[3] As this Court explained in another recent case:

"Because this action against the HUD defendants is effectively one against the Government, sovereign immunity can attach. But... if the Government expressly and unambiguously consents to jurisdiction, then sovereign immunity is waived."

Jackson v. Metropolitan Council HRA Management Ass'n, Civil No. 10-2370 (JRT/JJG), [Report and Recommendation dated March 18, 2011], (D.Minn. 2011), 2011 WL 1486039 at *2.

9

> "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.  <u>An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.</u>  The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States:  Provided, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance.  Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."  (Emphasis added.)

The highlighted sentence is an express Congressional waiver of sovereign immunity.  The statute plainly says that a claim brought against a federal employee in his or her official capacity, seeking relief other than money damages, (i.e., a claim for injunctive relief), shall not be dismissed on the ground that it is brought against the federal government.  See Raz v. Lee, 343 F.3d 936, 938 (8th Cir. 2003) (per curiam) ("section 702 of the Administrative Procedure Act (APA) expressly waives sovereign immunity as to any action for nonmonetary relief brought against the United States").[4]

Defendants acknowledge that "Section 702 is a waiver of sovereign immunity," but contend that "the waiver is limited to 'agency action.'" (Defendants' Memorandum In Support Of Motion To Dismiss, [Docket No. 20], p. 15.)  Plaintiff disputes that

---

[4]  See also Jackson, 2011 WL 1486039 at * 2 ("In this context, the critical distinction is the form of relief.  Regardless of the underlying cause of action, if nonmonetary relief is sought, the Government has expressly waived sovereign immunity through the Administrative Procedure Act (APA).")

10

contention, arguing that "the waiver of sovereign immunity provided by § 702 is not limited to 'agency action' under the APA."  (Plaintiff's Response To Defendants' Motion To Dismiss Under Rule 12(b)(1), [Docket No. 23], pp. 1-2.)  The Court sides with Plaintiff on this issue.

To start, the statute itself says that the waiver of sovereign immunity applies to actions "stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity."  The statutory language shows that the waiver must apply not only to actions by federal agencies, but also to actions or omissions by an officer or employee of the federal government.  See The Presbyterian Church (U.S.A.) v. United States, 870 F.2d 518, 525 (9th Cir. 1989) ("§ 702's waiver of sovereign immunity is not limited to suits challenging 'agency action'").

Moreover, federal courts have held that the § 702 immunity waiver is not limited to cases that are specifically brought under the APA to challenge actions undertaken by administrative agencies.  See Chamber of Commerce of U.S. v. Reich, 74 F.3d 1322, 1328 (D.C.Cir. 1996) ("[t]he APA's waiver of sovereign immunity applies to any suit whether under the APA or not"); Specter v. Garrett, 995 F.2d 404, 410 (3rd Cir. 1993) ("the waiver of sovereign immunity contained in § 702 is not limited to suits brought under the APA"), rev'd on other grounds, 511 U.S. 462 (1994); United States v. City of Detroit, 329 F.3d 515, 521 (6th Cir. 2003) ("[t]his circuit has applied the waiver of sovereign immunity in section 702 in cases brought under statutes other than the APA").

Both sides cite Simmat v. U.S. Bureau of Prisons, 413 F.3d 1225 (10th Cir. 2005), to support their contentions. Defendant cites the case for their proposition that § 702's waiver of sovereign immunity applies only to "agency action."  Plaintiff claims that

11

Simmat actually supports his contention that § 702 waives the sovereign immunity defense for individual federal employees who are sued in their official capacities for relief other than money damages. The Court agrees with Plaintiff's understanding of Simmat.

In Simmat, a federal prisoner attempted to sue two BOP dentists who allegedly were violating his Eighth Amendment rights, by failing to give him proper dental care. Simmat did not seek any money damages, but instead requested a judgment that would give him appropriate dental care. The Tenth Circuit held that the waiver of sovereign immunity created by § 702 is not limited to suits under the APA, and, instead, applies to official capacity claims against individual federal employees. Relying on § 702, the Court expressly declared that "[s]overeign immunity is therefore not a bar to Mr. Simmat's action for injunctive relief against the prison dentists." 413 F.3d at 1233.

Defendants' citation to Simmat includes a reference to, and parenthetical description of, the supposedly relevant ruling contained in FN9 of the case. (Defendants' Memorandum In Support of Motion to Dismiss, [Docket No. 20],pp. 15-16.) Yet, in reality, the footnote merely confirms that final "agency action" is required if a plaintiff seeks relief under the APA. As Simmat did not sue under the APA, the issue was moot. In other words, the Tenth Circuit distinguished using the APA as the vehicle to seek relief via judicial review of an agency decision, versus using the waiver language of the APA to bring a constitutional claim against a federal employee for injunctive relief. The latter does not require agency action.

Moreover, Simmat is not an anomaly. The Eighth Circuit Court of Appeals has also ruled that § 702 waives sovereign immunity for claims for injunctive relief brought

12

against federal employees in their official capacity.  In Raz v. Lee, supra, the plaintiff sued the Director of the FBI in his official capacity, seeking an injunction that would prohibit the Director and the FBI "from continuing their violations of his constitutional rights."  343 F.3d at 938.  The 8th Circuit concluded that the plaintiff's lawsuit should not have been dismissed based on sovereign immunity, because § 702 effectively waived the defendants' immunity from claims for injunctive relief.  Id.

Defendants argue that Raz is distinguishable from the case at bar, because Plaintiff's complaint "does not challenge an agency action, such as the one in Raz."  (Defendants' Memorandum In Support Of Motion To Dismiss, [Docket No. 20], p. 17.)  But Raz provides no support for Defendants' "agency action" argument.  Indeed, Raz makes no mention of "agency action."  Furthermore, the Court's decision in Raz clearly indicates that the plaintiff was suing the Director of the FBI (in his official capacity), as well as the FBI itself, and that the plaintiff could properly sue both the Director of the FBI and the Agency for the alleged violations of his constitutional rights.[5]

As in Simmat and Raz, Plaintiff does not seek judicial review of an agency decision under the APA. Instead, he seeks the Court's assistance to remedy what he

---

[5]  While Simmat and Raz appear to provide the strongest support for Plaintiff's position, there are other cases that also hold that sovereign immunity does not bar claims against government employees who are being sued in their official capacities for injunctive relief.  See e.g., Clark v. Library of Congress, 750 F.2d 89, 102, (D.C.Cir. 1984) ("[i]t is well-established that sovereign immunity does not bar suits for specific relief against government officials where the challenged actions of the officials are alleged to be unconstitutional or beyond statutory authority") (emphasis added); Sabina v. Federal Bureau of Prisons, C/A No. 0:08-3903 (D.S.C. 2010), 2010 WL 972579 at *4 ("because Sabina [a federal prisoner] is seeking only injunctive relief against the defendants in their official capacities, and because his Eighth Amendment claim raises a federal question, the court finds that it has jurisdiction over Sabina's suit for injunctive relief).

considers to be continuing constitutional violations by federal employees in their official capacities. The assistance he seeks is not for money, but for an order that will, in his view, correct the improper medical care he has received from defendants to date. Thus, he cites to the APA only to address the waiver issue. To put it simply, because Plaintiff is not seeking judicial review of an agency's action under the APA, no action by an agency is required to establish jurisdiction. Instead, the waiver provision of the APA permits this Plaintiff to seek equitable relief against the defendants in their official capacities and the matter cannot be dismissed on the jurisdictional grounds raised by defendants.

### E. Plaintiff Seeks Injunction – Not Mandamus

Finally, Defendants argue that Plaintiff cannot be granted a writ of mandamus that would compel them to provide him with certain medical care. (Defendants' Memorandum In Support Of Motion To Dismiss, [Docket No. 20], pp. 17-29.) But Plaintiff has not asked for a writ of mandamus in his complaint, and he has expressly disavowed any such request in his response to Defendants' motion to dismiss. (See Plaintiff's Response To Defendants' Motion To Dismiss Under Rule 12(b)(1), [Docket No. 23], p. 2, fn. 1 ("This is not a mandamus action."))

Furthermore, the relief that Plaintiff is seeking is available by means other than mandamus – i.e., by means of a mandatory injunction issued pursuant to 28 U.S.C. § 1331. In Simmat, the Tenth Circuit Court of Appeals ruled that the plaintiff could not sue the prison dentists, in their official capacities and for purely prospective relief, under Bivens. Simmat, 413 F.3d at 1231 ("[t]here is no such animal as a Bivens suit against a public official in his or her official capacity") (quoting Farmer v. Perrill, 275 F.3d 958, 963

(10th Cir. 2001)).  However, the Court found that Simmat could seek a mandatory injunction against the dentists under authority granted by 28 U.S.C. § 1331.

The Tenth Circuit explained in Simmat that § 1331 "provides jurisdiction for the exercise of the traditional powers of equity in actions under federal law."  413 F.3d 1232.  In other words, the statute that gives federal courts subject matter jurisdiction to decide cases involving questions of federal law, (i.e., § 1331), necessarily authorizes federal courts to grant injunctive relief to implement their decisions.  According to Simmat, "suits for relief directly under the Constitution fall within this grant of jurisdiction."  Id., citing Bell v. Hood, 327 U.S. 678 (1946).[6]  Thus, the Tenth Circuit determined that § 1331 authorizes federal courts to grant injunctive relief to protect claimants from constitutional wrongdoing by federal officials.  See also The Presbyterian Church (U.S.A.), 870 F.2d at 525 ("§ 702 waives sovereign immunity not only for suits brought under § 702 itself, but for constitutional claims brought under the general federal-question jurisdiction statute, 28 U.S.C. § 1331") (citing Beller v. Middendorf, 632 F.2d 788, 797 (9th Cir.), cert. denied, 452 U.S. 905 (1980)).

Simmat shows that Plaintiff need not rely on the mandamus statute, (28 U.S.C. 1361), to pursue the relief he is seeking here.  Plaintiff can rely on the inherent authority to issue injunctive relief that emanates from § 1331 – which is exactly what Plaintiff claims to be doing.  See Complaint, p. 1 ("This action is appropriately brought under 28 U.S.C. § 1331 instead of Bivens... as Bivens does not extend to claims for injunctive

---

[6] In Bell, the Supreme Court declared that "where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done."  327 U.S. at 684.

relief against officials in their official capacity."). Because Plaintiff need not, and does not, seek a writ of mandamus, Defendants' discussion of mandamus need not be addressed.[7]

## III. CONCLUSION

Plaintiff's current claims for injunctive relief, brought against Defendants in their official capacities, must be treated as claims against the federal Government itself. Accordingly, Plaintiff's claims are barred by the doctrine of sovereign immunity, unless such immunity has been waived. The waiver statute, § 702, on its face, refers to both agencies and "officer[s] or employee[s] thereof," and it refers to parties who "acted or failed to act." Thus, the statute itself does not limit the use of waiver of sovereign immunity to "agency action". Moreover, federal case law, most notably Simmat and Raz, support the notion that the waiver provision is not limited to APA or agency actions.

Thus, the Court concludes that § 702 waives sovereign immunity for Plaintiff's injunctive relief claims to address Defendants' alleged ongoing violations of Plaintiff's federal constitutional rights. Because § 702 effectively waives Defendants' sovereign immunity defense, their 12(b)(1) motion, seeking to have this action dismissed for lack of subject matter jurisdiction, must be denied.

Needless to say, the denial of Defendants' Rule 12(b)(1) motion will resolve only

---

[7] In Simmat, the Tenth Circuit concluded that "[t]he district court also had jurisdiction under 28 U.S.C. § 1361." 413 F.3d 1234 (emphasis added). The word "also" signifies that mandamus was not the only means by which Simmat could seek a court order compelling the prison dentists to provide the care he was seeking. The Court had already determined that Simmat could sue the dentists for injunctive relief under § 1331. Id. at 1231-33.

one issue – the threshold issue of whether subject matter jurisdiction exists in this case. Although Defendants have failed to sustain their position on that issue, they will still have an opportunity to raise other defenses to Plaintiff's current lawsuit. Defendants' evidentiary submissions suggest that Plaintiff will have to overcome additional obstacles in order to obtain the injunctive relief he is seeking in this case. For now, however, Plaintiff should be allowed to continue to pursue his claims for injunctive relief against Defendants in their official capacities. Those claims are not barred by sovereign immunity, and therefore this action should not be dismissed for lack of subject matter jurisdiction.

## IV.    RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Defendants' motion to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, (Docket No. 19), be **DENIED**; and

2. Defendants should be directed to file an answer or other procedurally appropriate response to Plaintiff's complaint within twenty (20) days.

Dated:  January 6, 2012          s/ *Jeanne J. Graham*
                                 JEANNE J. GRAHAM
                                 United States Magistrate Judge

### NOTICE

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **January 23, 2012**. A party may respond to the objections within fourteen (14) days after service thereof. Any objections or responses shall not exceed 3,500 words. The District Judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made.